UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:25-CR-126-Z-BR-1 |
| | § | |
| DAVID MEDINA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR PRETRIAL DETENTION

Defendant initially appeared before the undersigned on December 3, 2025 in connection with a two-count criminal indictment alleging charges of: (1) Conspiracy to Distribute and Possess with Intent to Distribute 50 grams or More of Methamphetamine (Actual), and (2) Distribution and Possession with Intent to Distribute 50 Grams or More of Methamphetamine (Actual). (ECF 8 *and* ECF 1 at 1). Now before the Court is the Government's motion to detain Defendant pending trial under 18 U.S.C. § 3142. (ECF 6).

The parties appeared and argued the motion before the undersigned at a detention hearing on December 5, 2025. (*See* ECF 19 (minute entry) *and* ECF 22 (transcript)). Each side proffered evidence, and the Government called one witness to testify. (*See* ECF 20 at 1) (Exhibit and Witness List). The undersigned then ordered each party to submit supplemental briefing while the matter was taken under advisement. (ECF 23).

Having considered the motion, the evidence and arguments of the parties, and the applicable law, the Court finds for the following reasons that the Government's motion should be DENIED. Defendant will be ORDERED released at a hearing on **Monday, December 22, 2025**

**at 11:15 a.m.**, subject to the conditions established by the forthcoming Order Setting Conditions of Release, an unsigned copy of which is attached to this Order.

## I.   BACKGROUND

The circumstances giving rise to this case were recounted by the Government's witness at the detention hearing—Eric Johnson, a special agent with Homeland Security Investigations ("HSI"). (ECF 22 at 4). Johnson testified that HSI, acting on information that Defendant was "moving large amounts of methamphetamine in and around the Amarillo area[,]" worked with the narcotics unit at the Amarillo Police Department to put an undercover officer in contact with Defendant. (*Id.*). In July of 2024, Defendant agreed to sell the undercover officer one pound of methamphetamine, and informed the officer that it would be one of five pounds that a courier was bringing him from Albuquerque, New Mexico. (*Id.* at 4–5).

Due to a delay in the delivery, the original agreed transaction was not consummated until September 24, 2024. (*Id.* at 5). On that date, the Defendant and his wife drove together to a pre-arranged meeting spot, where Defendant sold 461 grams—approximately one pound—of methamphetamine to the undercover officer, and made assurances that he would be able to get more in the future. (*Id.* at 6–7). The bundle of methamphetamine was sent to a Drug Enforcement Agency laboratory for testing, where it was confirmed to be approximately 96% pure. (*Id.* at 7).

In January of 2025, Johnson and an Amarillo Police Department officer contacted Defendant at his residence, where they spoke with him about this case and attempted to enlist his aid in apprehending the courier out of New Mexico. (*Id.* at 7–8). In that interview, Defendant admitted to selling methamphetamine, but claimed he only dealt in "small amounts." (*Id.* at 8). He informed the officers that the courier was a Mexican national and an illegal alien, and that the vehicle driven by the courier was registered in Defendant's wife's name. (*Id.* at 9).

That investigation did not ultimately result in capture of the courier. (*Id.* at 10). While those efforts were ongoing, however, in March of 2025, Defendant attempted to arrange another drug transaction with the original undercover officer. (*Id.* at 10–11). He did not inform the Amarillo Police Department or the Department of Homeland Security of those continued efforts at drug distribution. (*Id.* at 10).

## II.     APPLICABLE LAW

Once a person has been arrested for a federal crime and brought before a judicial officer, federal law requires that officer[1] to determine whether the person should be "be released or detained, pending judicial proceedings[.]" 18 U.S.C. § 3141.

In keeping with the presumption of innocence until guilt is proven, the standard is to release the person on their personal recognizance, or upon execution of an unsecured appearance bond in an amount set by the Court. *Id.* at § 3142(b); *see also Chavez v. Cockrell*, 310 F.3d 805, 808 (5th Cir. 2002) ("The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice.") (quoting *Estelle v. Williams*, 425 U.S. 501, 503 (1976)). The sole conditions attaching to such release are those that apply in all cases; the defendant must cooperate in providing a DNA sample, if the law authorizes one to be taken, and must not violate any laws while on release. *Id.* at § 3142(b).

The law only permits a judicial officer to deviate from that standard if "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *Id.* The first of these elements, the reasonable assurance of the person as required, is commonly evaluated in terms of a defendant's "flight risk." The second, the

---

[1] The term "judicial officer" is used here because federal law permits a wide variety of federal, state, and local officials to perform this function. 18 U.S.C. § 3041.

danger posed by a defendant's release to the safety of other persons and the community, is often paraphrased as a defendant's "dangerousness."

If a defendant's flight risk and dangerousness do not permit release on personal recognizance or an unsecured bond, the law requires they be released "subject to the least restrictive further condition, or combination of conditions, that" will reasonably account for the defendant's flight risk and dangerousness. *Id.* at § 3142(c)(1)(B). The statute then lists fourteen different examples of such conditions, the last of which is "any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." *Id.* at 3142(c)(1)(B)(i)–(xiv). Some of these conditions are mandatory in cases involving minor victims or failure to register as a sex offender, and no financial conditions can be imposed in any case that would result in pretrial detention of those too poor to satisfy it; otherwise, conditions of release are left to the discretion of the judicial officer, who may amend them at any time. *Id.* at 3142(c)(1–3).

None of the options described above—release on personal recognizance, on an unsecured bond, or on conditions of release—require a prior hearing. The judicial officer must hold a hearing, however, before ordering any person detained before trial. *Id.* at 3142(e)(1). A government attorney can request a detention hearing in limited categories of cases. *Id.* at 3142(f)(1)–(2). If the Government does not move for a detention hearing, the judicial officer can only hold one if there is "a serious risk that [the defendant] will flee[,] or a serious risk that [the defendant] will [or will] attempt to obstruct justice, or threaten, injure, or intimidate . . . a prospective witness or juror." *Id.* at 3142(f)(2)(A)–(B) (internal numbering omitted).

The law sets various standards for the detention hearing. It must occur within a specified time, and the defendant has the right to be represented by counsel. *Id.* at 3142(f). Though the rules for the admissibility of evidence do not apply to the hearing, and the law makes no specific

4

provisions for the Government to offer evidence, it does reserve to the defendant the rights to testify, present witnesses, cross-examine witnesses who appear, "and to present information by proffer or otherwise." *Id.*

A judicial officer must order a defendant detained pending trial only if, "after a hearing . . ., the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* at 3142(e)(1). The facts used to support a finding on dangerousness must "be supported by clear and convincing evidence." *Id.* at 3142(f). The statute is silent as to the evidentiary standard for flight risk, and courts in this Circuit evaluate that element using a preponderance of the evidence standard. *See United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985)

In some cases, the law imposes a presumption that the defendant should be detained, and requires the defendant to rebut that presumption. *Id.* at 3142(e)(2)–(3). Even in those cases, however, there is no "burden of persuasion" on the defendant, who is required merely to produce evidence sufficient to rebut the presumption. *United States v. Flores*, 53 F.4th 313, 315 (5th Cir. 2022) (quoting *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989)).

When deciding whether to release or detain a defendant, and whether to impose conditions on that release, the law requires judicial officers to consider certain factors. These include:

> the available information concerning the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; the weight of the evidence against the person; the history of and characteristics of the person, . . . and the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g)(1)–(4) (internal numbering and punctuation omitted). The "history and characteristics of the" defendant are specified to include a wide range of details, including[2]

---

[2] The statute does not limit the Court to considering the defendant's history and characteristics in only the listed ways.

character, physical and mental state, substance abuse history, employment, community ties, past conduct, criminal history, and any pending criminal proceedings under federal, state, or local law. *Id.* at 3142(g)(3)(A)–(B).

To summarize, in keeping with the presumption of innocence, the law imposes a strong bias in favor of releasing defendants while their case proceeds. A defendant may be ordered detained pending trial only if, after a hearing at which they were given legal counsel and were permitted to produce their own evidence, the preponderance of evidence precludes a reasonable assurance that they would appear in court when ordered to do so, and clear and convincing evidence precludes a reasonable assurance that they would not pose a danger to other people or the community.

### III.   ANALYSIS

In this case, the Government was permitted to move for a pretrial detention hearing because the offense charged is one for which the Controlled Substances Act sets a maximum sentence including ten years or more of imprisonment. (ECF 6 at 1); *see* 18 U.S.C. § 3142(f)(1)(C). This is a rebuttable presumption case for the same reason. *See* 18 U.S.C. 3142(e)(3)(A). The Government originally moved for detention on both the grounds of flight risk and dangerousness. (ECF 6 at 2). At the detention hearing, the Government withdrew the request for detention based on flight risk, and now moves solely on dangerousness. (ECF 22 at 13).

There is not clear and convincing evidence in this case to show that Defendant will pose a danger to the safety of other persons or the community if released. The Government's argument to the contrary focuses on the nature and circumstances of the offense charged. Defendant told an undercover officer that he expected to receive a five-pound shipment of methamphetamine that he would then distribute into the Amarillo community. (ECF 22 at 5). He then tried to continue selling narcotics to an undercover officer while ostensibly cooperating with law enforcement, leading the

6

Government to argue that he is not "truthful" and would not "be truthful to this Court about his activities." (*Id.* at 14). The Government argues that he would "engage in this conduct again while out on conditions" because "even after law enforcement contacted him," he continued to try to sell drugs. (*Id.* at 14–15).

In other words, the Government's evidence that Defendant will be dangerous to the community if released consists of a statement he made to an undercover agent whom he thought wanted to purchase large quantities of drugs, and of the fact that he continued dealing drugs while working as a confidential informant for law enforcement. This is not clear and convincing evidence that no combination of conditions could reasonably assure the Defendant will not sell drugs while on pretrial release.

Defendant's criminal history includes two other narcotics charges—from 1994 and 1996, both for possession of small amounts of marijuana. At the detention hearing, Special Agent Johnson testified that Defendant had no weapons on his person when encountered by law enforcement (ECF 22 at 11), and nothing in Defendant's history indicates a risk of violence. Defendant has been unemployed since November of 2025, but has a lengthy employment history.

Defendant highlights that in the year between the drug transaction for which he has now been arrested and the date of that arrest, the Government tried to enlist Defendant's help in arranging a drug deal that would result in the capture of his courier. (ECF 26 at 4). The call to arrange a transaction with the undercover officer occurred during this time, when the Government was already aware and making use of Defendant's ongoing narcotics activity. Defendant argues that, if the attempt to sell to the undercover agent in March of 2025 were clear and convincing evidence that Defendant posed a danger to the community, the Government should have arrested him immediately; instead, they continued to work with him for months. (*Id.* at 4). As stated in Defendant's brief, "It defies logic that the Government would leave an individual on the streets for

7

14 months who presented a danger to the community." (*Id.* at 3). The Court agrees that "[t]hese facts undermine the credibility of the Government's case for detention." (*Id.*).

There is not clear and convincing evidence that no combination of conditions will reasonably assure the safety of other persons and the community while Defendant is on release. Accordingly, the Court intends to impose conditions indicated in the unsigned Order Setting Conditions of Release that is attached to this Order. At the hearing to set conditions of release, the Court will permit either party to request additions or modifications to the terms indicated here.

### IV.    CONCLUSION

Having reviewed the parties' arguments and evidence, and the applicable law, it has not been shown by the preponderance of the evidence that no combination of conditions could reasonably assure the appearance of Defendant as required, nor by clear and convincing evidence that no combination of conditions could reasonably assure and the safety of other persons and the community if Defendant is released. Accordingly, the Government's motion to detain Defendant pending trial is DENIED. The Defendant will be ORDERED released at a hearing on **Monday, December 22, 2025 at 11:15 a.m.**, subject to the conditions established by the forthcoming Order Setting Conditions of Release. An unsigned version of that forthcoming Order has been attached to this Order to provide notice to the parties.

IT IS SO ORDERED.

ENTERED on December 19, 2025.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

8